UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

IN RE:                                             **OPINION & ORDER**

MIRENA IUD PRODUCTS LIABILITY LITIGATION            13-MD-2434 (CS)

*This Document Relates To*
Abrams v. Bayer, 14-CV-5229
Anderson v. Bayer, 14-CV-1967
Blair v. Bayer, 14-CV-6178
Boudreaux v. Bayer, 14-CV-1676
Calamari v. Bayer, 14-CV-6874
Campbell v. Bayer, 14-CV-34
Childers v. Bayer, 14-CV-1612
Cochran v. Bayer, 13-CV-8883
Condich v. Bayer, 14-CV-6875
Cook v. Bayer, 14-CV-1673
Davis v. Bayer, 14-CV-6200
Dollins v. Bayer, 14-CV-6611
Fitzgerald v. Bayer, 14-CV-2572
Hartford v. Bayer, 14-CV-1983
Helms v. Bayer, 14-CV-6179
Horn v. Bayer, 14-CV-6879
Jones v. Bayer, 13-CV-3383
Lovett v. Bayer, 14-CV-3895
Medinger v. Bayer, 14-CV-4521
Offlee v. Bayer, 14-CV-1675
Olteanu v. Bayer, 13-CV-8860
Parnell v. Bayer, 14-CV-4507
Piscionere v. Bayer, 14-CV-7311
Schroeder v. Bayer, 14-CV-4522
Smith v. Bayer, 14-CV-5232
Spurlock v. Bayer, 14-CV-6479
Thate v. Bayer, 14-CV-4509
Wojtowicz v. Bayer, 13-CV-4693
Walton v. Bayer, 14-CV-4525
Williams v. Bayer, 14-CV-3485
Wilmot v. Bayer, 14-CV-1979
-----------------------------------------------------------------------x

<u>Appearances</u>:
Brian A. Pfleeger, Esq.
Michael Hingle & Associates, LLC
Slidell, Louisiana
*Counsel for Terrione Anderson, Timira Campbell, Angie Cochran, Nicole Hartford,*
*Melissa Jones, Ioana Olteanu, and Michelle Wilmot*

Allan Berger, Esq.
Andrew Geiger, Esq.
Allan Berger & Associates, PLC
New Orleans, Louisiana
*Counsel for Cathy Boudreaux, Cynthia Childers, Kelly Cook, Luciana Offlee,*
*and Janet Williams*

Brian S. Kabateck, Esq.
Richard L. Kellner, Esq.
Lina B. Melidonian, Esq.
Kabateck Brown Kellner, LLP
Los Angeles, California
*Counsel for "California Plaintiffs"*

Bradley C. West, Esq.
The West Law Firm
Shawnee, Oklahoma
*Counsel for Rachel Fitzgerald*

Pamela A. Borgess, Esq.
James G. O'Brien, Esq.
Zoll, Kranz & Borgess, LLC
Toledo, Ohio
*Counsel for Rebecca Wojtowicz*

Shayna S. Cook, Esq.
Goldman Ismail Tomaselli Brennan & Baum, LLP
Chicago, Illinois

William P. Harrington, Esq.
Bleakley Platt & Schmidt, LLP
White Plains, New York
*Counsel for Defendants*

Seibel, J.

Before the Court are Defendants' Motions to Dismiss the 31 member cases in the caption

pursuant to Case Management Order No. ("CMO") 22A, (13-MD-2434, Doc. 1510).  Under

CMO 22A, Defendants are permitted to submit a letter explaining why each case should be

dismissed consistent with this Court's opinion in *Truitt v. Bayer*, No. 13-CV-7811, 2014 WL

2971179 (S.D.N.Y. July 2, 2014).  Each Plaintiff against whom Defendants so move must then

either voluntarily dismiss her case with prejudice or set forth the specific facts and/or law that distinguish her case from Ms. Truitt's.  Despite the number of individual member cases that Defendants have moved to dismiss, Defendants' motions implicate only four discrete sets of issues, and each case fits into one of these four groups.

The parties' familiarity with the procedural history of this multi-district litigation ("MDL") – including the discussion of fact and law in *Truitt*, which is hereby incorporated – and the facts alleged in each individual member case is presumed.

## I.   Applicable Legal Principles

### A.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

A defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to

dismiss. *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, 153 (S.D.N.Y. 2011) (citing *Ghartey v.

St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).[1]  The plausibility standard

announced by the Supreme Court in *Iqbal* and *Twombly* applies to motions to dismiss based on

statutes of limitations, *see George v. Strayhorn*, No. 11-CV-3701, 2014 WL 1259613, at *2

(S.D.N.Y. Mar. 24, 2014), and "the Court can only grant a motion to dismiss based on statute of

limitations grounds if there is no factual question as to whether the alleged violations occurred

within the statutory period," *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 369

(E.D.N.Y. 2012).

### B.  Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to

amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory

---

[1] MDL transferee courts apply the law of the transferee court as to matters of federal law, *see Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993), which include Fed. R. Civ. P. 12(b)(6) standards, *see Berry v. Bryan Cave LLP*, No. 08-CV-2035, 2010 WL 1904885, at *3 (N.D. Tex. May 11, 2010) (citing *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008)).

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Further, a plaintiff need not be given leave to amend if she fails to specify how amendment would cure the pleading deficiencies in her complaint.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *see also Gallop v. Cheney,* 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result).

## II.   <u>Louisiana Plaintiffs[2]</u>

The twelve Louisiana Plaintiffs submitted substantively identical oppositions to Defendants' motions to dismiss, contending that their claims are timely under Louisiana's one-year prescription period for products liability claims, La. Civ. Code Ann. Art. § 3492, and Louisiana's version of the discovery rule.[3]  These Plaintiffs failed, however, to comply with CMO 22A, as they did not explain either how Louisiana's discovery rule differs from Texas's and Indiana's discovery rules (which were at issue in *Truitt*), or how the factual allegations in their complaints differed from those made by Ms. Truitt.  For this reason alone the Louisiana Plaintiffs' cases are subject to dismissal.  *See In re World Trade Ctr. Litig.*, 722 F.3d 483, 487

---

[2] The "Louisiana Plaintiffs" are plaintiffs in *Anderson v. Bayer*, 14-CV-1967; *Boudreaux v. Bayer*, 14-CV-1676; *Campbell v. Bayer*, 14-CV-34; *Childers v. Bayer*, 14-CV-1612; *Cochran v. Bayer*, 13-CV-8883; *Cook v. Bayer*, 14-CV-1673; *Hartford v. Bayer*, 14-CV-1983; *Jones v. Bayer*, 13-CV-3383; *Offlee v. Bayer*, 14-CV-1675; *Olteanu v. Bayer*, 13-CV-8860; *Williams v. Bayer*, 14-CV-3485; and *Wilmot v. Bayer*, 14-CV-1979.

[3]  The seven Louisiana Plaintiffs who are represented by Michael Hingle & Associates submitted the same letter. (*E.g.*, 14-CV-1967, Doc. 28 (the "Hingle Letter").)  The five Louisiana Plaintiffs who are represented by Allan Berger & Associates submitted nearly identical letters.  (*E.g.*, 14-CV-1676, Doc. 31 (the "Berger Letter").)

(2d Cir. 2013) ("in complex cases" district courts are accorded "particular deference [when making] discretionary determination[s] undertaken to manage the litigation before the court").

Nevertheless, even considering the substance of the Louisiana Plaintiffs' argument, it is clear that Louisiana's discovery rule does not render their claims timely. Louisiana's discovery rule delays the running of the prescription period until "the injured party discovers or should have discovered the facts upon which [her] cause of action is based." *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994). Under this rule, which is strictly construed, *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002),

> [w]here allegations of medical causation are vital to the cause of action, prescription does not run until plaintiff has actual or constructive notice of the causal connection between the medical treatment and the subsequent condition. Such constructive knowledge exists when plaintiff has sufficient information to incite curiosity, to excite attention, or to put a reasonably minded person on guard and call for inquiry.

*Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 630 (2d Cir. 1998) (internal quotation marks and citations omitted) (applying Louisiana law). Thus, the time to sue begins to run when a plaintiff has a reasonable basis to pursue a claim against a specific defendant. *Terrebonne*, 290 F.3d at 320.

Louisiana Plaintiffs argue that, on a Fed. R. Civ. P. 12(b)(6) motion, the Court cannot determine when the statute of limitations began to run, because discovery is needed to determine when each Plaintiff knew that Mirena was at fault for her injuries. (*See* Hingle Letter 2; Berger Letter 2.) Under Louisiana law, however, it is Plaintiff's burden to demonstrate the timeliness of a facially time-barred claim, *see Mungovan v. CitiMortgage, Inc.*, No. 12-CV-616, 2013 WL 3783982, at *2 (E.D. La. July 18, 2013), and under federal law it is her burden to allege facts plausibly suggesting she can do so, *see George*, 2014 WL 1259613, at *2; *see also Angiulo v. Cnty. of Westchester*, No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012)

(under *Iqbal*, "a plausible claim must come *before* discovery, not the other way around") (emphasis in original).  Moreover, putting burdens aside, each of the Louisiana Plaintiffs alleges (as in *Truitt*) that she underwent an operation to remove the Mirena from an area of the body where it was not supposed to be – either outside of or embedded in the uterus.[4]  *See Truitt*, 2014 WL 2971179, at *6 ("[W]hen an IUD is found somewhere in a woman's body where it is not supposed to be . . . and surgery is required to remove it, a diligent individual would know, at the very least, that there was a reasonable possibility that the IUD harmed her and she should therefore make further inquiry to determine her legal rights.") (internal quotation marks and citations omitted).  Such an occurrence gives a plaintiff a reasonable basis to believe she may have a claim against the device's manufacturer and thus is sufficient to trigger the Louisiana statute of limitations.  *See Averette v. Bayer Healthcare Pharms. Inc.*, No. 13-CV-5968, 2014 WL 1246851, at *4 (E.D. La. Mar. 25, 2014) (on a motion to dismiss, "[i]t would be unreasonable to argue that notice was sufficiently present for Averette to seek medical attention, request that the device be removed, and ultimately have the device surgically removed, but not sufficiently present to prompt further inquiry into the presence of a possibly tortious act within the one-year prescriptive period"); *see also Mistich v. Cordis Mfg. Co.*, 607 So. 2d 955, 956 (La. Ct. App. 1992) ("When plaintiff and her parents learned that the pacemaker had to be replaced in 1983 after being told just three years previously that it would last a lifetime, they had constructive notice or knowledge of its defectiveness and prescription started running.").[5]

---

[4] Although Louisiana Plaintiffs' opposition letters did not explain how their factual allegations differ from those made by Ms. Truitt (or even summarize what allegations they made), I have reviewed each of their complaints.

[5] In *Hoerner v. Wesley-Jensen*, 684 So. 2d 508 (La. Ct. App. 1996), which is not cited by any Louisiana Plaintiff, the Louisiana Court of Appeals held that the prescription period began running on the date the plaintiff, who needed a corneal transplant due to an eye infection, read a study indicating that extended wear contacts raised the risk of severe eye infections, not on the date of the transplant, *see id.* at 509, 514.  Louisiana Plaintiffs' cases are unlike *Hoerner*, because the link between the Mirena – which had perforated or embedded in the uterus and needed to be

The Louisiana Plaintiffs' cases are thus properly dismissed on a Fed. R. Civ. P. 12(b)(6) motion. *See Clement*, 914 F. Supp. 2d at 369. Moreover, because they neither request permission to file amended complaints nor suggest that they possess facts that could cure the defects identified above, their claims are dismissed with prejudice. *See Gallop,* 642 F.3d at 369.

## III.   California Plaintiffs[6]

The seventeen California Plaintiffs – each of whom is represented by Kabateck, Brown, Kellner, LLP – filed suit in California even though their Mirenas were inserted and removed in other states, and even though they were not California residents at the time of insertion or removal.[7] Defendants contend that the California Plaintiffs' suits are barred by California's two-

---

surgically removed – and Louisiana Plaintiffs' injuries was much more obvious than the link between extended-wear contact lenses and the eye infection in *Hoerner*. *See Averette*, 2014 WL 1246851, at *4 ("Unlike the plaintiff in *Hoerner*, Averette knew that her symptoms were caused by the Mirena device rather than by some other harm present throughout the environment and experienced by those who were not using the Mirena device.").

Also unhelpful to Louisiana Plaintiffs is *Sanchez v. Bos. Scientific Corp.*, No. 12-CV-5762, 2014 WL 202787 (S.D. W. Va. Jan. 17, 2014), a case the Hingle Letter cites (by merely providing the docket number, not a citation to an online database) for the proposition that the Louisiana Plaintiffs did not know enough about the link between Mirena and their injuries when the Mirena was removed to trigger the prescription period, (*see* Hingle Letter 2). *Sanchez* held that the statute of limitations for a suit against the manufacturer of vaginal mesh was not triggered by repeated doctor visits and surgeries to relieve irritation caused by vaginal mesh. *Sanchez* is inapposite to Louisiana Plaintiffs' cases because, first, it applied California law, not Louisiana law. *See Sanchez*, 2014 WL 202787, at *5. Second, the facts of *Sanchez* are distinguishable. In *Sanchez*, the plaintiff's doctors indicated that the irritation was caused by the plaintiff's body, not the vaginal mesh. *See id.* at *2, 7-8 (where physician told plaintiff "she had 'no idea why this was happening and for some reason [plaintiff's] body did not like' the mesh products," there was a question of fact whether plaintiff reasonably believed "the cause of her symptoms were related to her body's rejection of the mesh" rather than a defect with the mesh). Here, for the reasons stated in *Truitt*, it was obvious that the Mirena device was not functioning as intended; there was a clear link between Mirena and the Louisiana Plaintiffs' injuries; and Louisiana Plaintiffs neither pleaded nor provided in their opposition letters any facts as to plausible alternative explanations for their injuries that would have dissuaded a reasonable individual from inquiring into the link between her injuries and the Mirena that perforated or embedded in her uterus.

[6] The "California Plaintiffs" are plaintiffs in Abrams v. Bayer, 14-CV-5229; Blair v. Bayer, 14-CV-6178; Calamari v. Bayer, 14-CV-6874; Condich v. Bayer, 14-CV-6875; Davis v. Bayer, 14-CV-6200; Dollins v. Bayer, 14-CV-6611; Helms v. Bayer, 14-CV-6179; Horn v. Bayer, 14-CV-6879; Lovett v. Bayer, 14-CV-3895; Medinger v. Bayer, 14-CV-4521; Parnell v. Bayer, 14-CV-4507; Piscionere v. Bayer, 14-CV-7311; Schroeder v. Bayer, 14-CV-4522; Smith v. Bayer, 14-CV-5232; Spurlock v. Bayer, 14-CV-6479; Thate v. Bayer, 14-CV-4509; and Walton v. Bayer, 14-CV-4525.

[7] It appears that at least one of these Plaintiffs, Ms. Calamari, became a California resident prior to filing her lawsuit, but after her Mirena was removed. (*See* 14-CV-6874, Doc. 6, at 1.) The remaining California Plaintiffs apparently have no, and never had any, connection to California.

year statute of limitations, Cal. Civ. Proc. § 335.1. (*See, e.g.,* 14-CV-6178, Doc. 6.) The California Plaintiffs filed substantively identical oppositions to Defendants' motions, arguing that: 1) the longer statute of limitations of the state of insertion or removal, not California's statute of limitations, applies; 2) if California law applies, its discovery rule is different than those of Texas and Indiana, such that "application of California's discovery rule would require the court to delve into Plaintiff's specific knowledge and understanding of the defect of the Mirena at the time of [removal]"; and 3) Defendants should be judicially estopped from asserting that California's statute of limitations applies, because that assertion contradicts Defendants' earlier position that the California Plaintiffs improperly filed multi-plaintiff actions in California. (*See, e.g., id.* Doc. 7.) These arguments are unavailing.

### A. Choice of Law

Each of these diversity cases was filed in California. Accordingly, California's choice-of-law rules apply. *See Menowitz*, 991 F.2d at 40; *see also In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-1596, 2009 WL 5062114, at *11 (E.D.N.Y. Dec. 10, 2009) (applying California's choice-of-law rules to MDL member case filed in California), *aff'd sub nom. Guillen v. Eli Lilly & Co.*, 394 F. App'x 814 (2d Cir. 2010) (summary order).

"California applies the governmental interest approach to conflict of law issues." *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003) (internal quotation marks omitted). The governmental interest approach consists of three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to

the policy of the other state and then ultimately applies the law of the state whose
interest would be more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010) (internal quotation marks
omitted).

The parties agree that California's two-year statute of limitations is shorter than the
statutes of limitations of the states in which the California Plaintiffs' Mirenas were inserted
and/or removed.  These statutes thus differ, and the issue becomes whether the foreign states
possess an interest in having their statutes of limitations for products liability claims apply to
California Plaintiffs' cases and, if they do possess such an interest, whether the foreign states'
interest outweighs California's interest in having its shorter statute of limitations applied.  In
conducting this analysis, the Court must examine each state's interest in having the particular
law at issue (here, the statute of limitations), rather than its laws in general, applied to the case.
*See id.* at 527-32.[8]

California jurisprudence makes clear that "[s]tatutes of limitation are designed to protect
the enacting state's residents and courts from the burdens associated with the prosecution of stale
cases in which memories have faded and evidence has been lost."  *Ashland Chem. Co. v.
Provence*, 181 Cal. Rptr. 340, 341 (Cal. Ct. App. 1982).  Accordingly,

> California's interest in applying its own law is strongest when its statute of
> limitations is shorter than that of the foreign state, because a state has a substantial
> interest in preventing the prosecution in its courts of claims which it deems to be
> stale.  Hence, subject to rare exceptions,[9] [California courts] will dismiss a claim
> that is barred by [California's] statute of limitations.

---

[8] Accordingly, California Plaintiffs' citation to choice-of-law cases in which there were conflicts as to the
substantive law – not the statute of limitations – to be applied, (*see, e.g.,* 14-CV-6178, Doc. 7, at 2-3), is not helpful,
particularly when compared with the below-cited cases that dealt with conflicts as to which statute of limitations to
apply.

[9] The Restatement (Second) of Conflict of Laws (1988), from which *Deutsch* quotes, provides three examples of
such "rare exceptions," none of which is applicable here.  The first is when "an alternative forum is not available as,
for example, where jurisdiction could not be obtained over the defendant in any state other than that of the forum or

*Deutsch*, 324 F.3d at 716-17.[10]  This rule applies even where all of the relevant events occurred

in a foreign state, regardless of whether the plaintiff is a resident of the foreign state or

California.  *See Carlton v. Hertz Corp.*, No. 12-CV-07178, 2013 WL 394894, at *4 (C.D. Cal.

Jan. 28, 2013) (Florida had no interest in applying its longer statute of limitations, under which

plaintiff's claims would be timely, where all relevant events occurred in Florida but claims were

brought in California, California's statute of limitations rendered the claims untimely, defendants

were citizens of neither Florida nor California, and plaintiff was California citizen); *Davis*, 75

Cal. Rptr. 2d at 830 (California was the "only state interested in applying its statute of

limitations" where Oregon's statute of limitations would have rendered claims regarding

allegedly defective heart valve timely and heart valve was implanted into Oregon citizen in

Oregon, but claim was brought in California against California citizen and was untimely under

California law); *Ashland*, 181 Cal. Rptr. at 341 (claim was timely under Kentucky law but not

California law, related to events that occurred in Kentucky, and was asserted by Kentucky

plaintiff against California defendant, but Kentucky possessed "no interest in having its statute of

---

where for some reason a judgment obtained in any other state having jurisdiction would be unenforceable elsewhere." *Id.* § 142 cmt. f.  The second is where "suit in the alternative forum, although not impossible, would be extremely inconvenient for the parties." *Id.*  The third is where "the forum has a short statute of limitations whose primary purpose is not to protect the local courts against stale evidence but rather to insure that a specified claim involving either local persons or local events should be brought in a brief space of time." *Id.*

[10] California Plaintiffs attempt to cabin *Deutsch* to the particular facts that confronted the Ninth Circuit in that case. (*See, e.g.,* 14-CV-5229, Doc. 9, at 1.)  This argument is unpersuasive.  First, *Deutsch* involved application of California's choice-of-law analysis where the suit was brought in California courts for claims that were time-barred under California law.  Although *Deutsch* involved some California defendants and plaintiffs, the analysis speaks to broader concerns regarding the burden placed on California courts when they are forced to hear claims California law considers to be stale.  Second, *Deutsch* appears to be in harmony with prior California state court decisions. *See, e.g., Davis v. Shiley, Inc.*, 75 Cal. Rptr. 2d 826, 830 (Cal. Ct. App. 1998); *Ashland*, 181 Cal. Rptr. at 341. Finally, since *Deutsch*, courts applying California law have followed it, *see Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1131 (N.D. Cal. 2012) (collecting cases), and California Plaintiffs cite no case either limiting or declining to follow *Deutsch*.  Indeed, California Plaintiffs cite no case in which a California court applied a foreign state's statute of limitations when California's statute of limitations was shorter.

limitations applied because [there were] no Kentucky defendants and Kentucky [was] not the forum"); *see also RSI Corp. v. Int'l Bus. Machs. Corp.*, No. 08-CV-3414, 2012 WL 3277136, at *10 (N.D. Cal. Aug. 9, 2012) ("California courts generally give little weight to a plaintiff's residence in choosing the appropriate statute of limitations.") (collecting cases).[11]   Accordingly, unless California Plaintiffs can point to some extraordinary interest of the foreign states in keeping their claims alive – beyond the fact that their claims relate to events that occurred in those foreign states and would be timely under their statutes of limitations – California's statute of limitations will apply.  *See Theranos*, 876 F. Supp. 2d at 1131 ("Federal courts sitting in California and applying a *Deutsch* analysis consistently conclude that California's statute of limitations applies when faced with a choice-of-law . . . absent a rare exception or extraordinary interest by a foreign state to keep alive the claims.").

Because California Plaintiffs have not presented evidence of such extraordinary interests,[12] under California's choice of law principles, there is either a "false conflict" between California law and the law of the foreign states, *see, e.g., Carlton*, 2013 WL 394894, at *4; *Davis*, 75 Cal. Rptr. 2d at 830; *Ashland*, 181 Cal. Rptr. at 341, or California's "substantial interest in preventing the prosecution in its courts of claims it deems to be stale," *Deutsch*, 324 F.3d at 717 (internal quotation marks omitted), outweighs that of the foreign states.

---

[11] The flip side of this rule is that where a California citizen sues a foreign defendant in a California court and the statute of limitations of the foreign jurisdiction would bar a claim that California law would consider timely, the foreign jurisdiction's statute of limitations ordinarily applies.  *See McCann*, 225 P.3d at 535 (applying foreign state's statute of limitations in such a situation, and stating "California decisions have adopted a restrained view of the scope or reach of California law with regard to the imposition of liability for conduct that occurs in another jurisdiction and that would not subject the defendant to liability under the law of the other jurisdiction").

[12] California Plaintiffs have pointed only to the foreign state's interest in having its substantive law apply to events occurring within its borders.  (*See, e.g.,* No. 14-CV-6178, Doc. 7, at 2-3.)  Not only is this an apples-to-oranges comparison, (*see* n.8 above), but such an interest, while it may be strong, is an ordinary interest.  If it were sufficient to trump California's "substantial interest" in enforcing its statute of limitations, *Deutsch*, 324 F.3d at 717, the cases "consistently" applying California's statute of limitations, *see Theranos*, 870 F. Supp. 2d at 1131, would have come out the other way.

Despite the authority cited above, California Plaintiffs contend that

> California's interest against clogging up its courts with stale cases is highly
> inapplicable to the specific facts here because: (i) Plaintiff's case was filed with
> the expectation that it would be transferred to the MDL immediately, which it
> was; (ii) Plaintiff's claims are presently being litigated in the Southern District of
> New York; (iii) Plaintiff's claims will be remanded back and tried in [Plaintiff's
> state of residency] if and when pre-trial discovery is completed in the MDL; and
> (iv) there are no California parties in this lawsuit.

(*E.g.*, 14-CV-5229, Doc. 9, at 2.)

California Plaintiffs' first three arguments are entirely without merit.  Their attorneys

filed their cases in California district courts (for no reason the Court can discern other than their

California-based attorneys' convenience), which under clear Second Circuit precedent (which

California Plaintiffs knew would apply given that this MDL had been consolidated in this Court

before they filed their lawsuits) rendered California the forum state even after transfer to this

MDL.  *See Menowitz*, 991 F.2d at 40; *see also IBLC Abogados, S.C. v. Bracamonte*, No. 11-CV-

2380, 2013 WL 3829401, at *11 (S.D. Cal. July 23, 2013) ("Plaintiff chose the California court

understanding that that action would be taken into account in favor of applying California

law.").[13]  Moreover, even assuming this fact would be relevant if true, California Plaintiffs' bald

assertion that their cases "will *never* be remanded back to California courts upon the completion

of pretrial discovery in the MDL," (14-CV-5229, Doc. 9, at 1), appears to be contrary to law, *see*

28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded . . . to the district *from which

it was transferred . . . .*") (emphasis added); J.P.M.L. Rules of Procedure 10.1-10.4 (discussing

---

[13] California Plaintiffs' counsel also presumably knew that the forum state's choice-of-law rules would govern and
that California's statute of limitations was only two years.

remand solely to "the transferor court"), and is unsupported by any provision of CMO 20, (*see* 13-MC-2434, Doc. 67).[14]

California Plaintiffs' final contention (that California's interest in applying its statute of limitations is at its nadir because there are no California parties) is unavailing for the reasons stated above – *i.e.* even absent any California party, California still has a "substantial interest in preventing the prosecution in its courts of claims which it deems to be stale." *Deutsch*, 324 F.3d at 717 (internal quotation marks omitted). This substantial interest outweighs the foreign state's interest in having its longer statute of limitations apply unless the plaintiff can show that the foreign state has an "extraordinary interest" beyond the mere fact that claims would be timely if its law applied. *See Theranos*, 876 F. Supp. 2d at 1131.[15] As stated above, California Plaintiffs have not made such a showing.

Accordingly, California's statute of limitations and discovery rule apply to California Plaintiffs' claims.

---

[14] California Plaintiffs state that "[a]s intended to [*sic*] by CMO 20," their cases "will *never* be remanded back to California courts." (*E.g.*, 14-CV-5229, Doc. 9, at 1 (emphasis in original).) I am at a loss as to how California Plaintiffs could have read any such intention into CMO 20.

[15] I note that there is one case, which California Plaintiffs do not cite, that provides some superficial support for their argument that the foreign states' statutes of limitations should apply. In *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482 (9th Cir. 1987), defendants were not California citizens, the plaintiff was a California citizen, the injury occurred in a foreign state that would have considered the claim timely, and the claim was untimely under California law. The court held that the longer statute of limitations of the state of injury applied, because defendants were citizens of states in which the claims would be timely, California law expressed an interest in permitting California residents to recover "for injuries sustained in a state that would recognize their claim as timely," *id.* at 485-86, and the foreign state had expressed an interest in hearing the claim, *see Carlton*, 2013 WL 394894, at *3. To whatever extent *Ledesma* is still good law after *Deutsch*, the peculiar configuration of parties that weighed in favor of application of the longer foreign statute of limitations in *Ledesma* is not present here. Defendants are citizens of New Jersey, which has a two-year statute of limitations, *see* N.J. Stat § 2A:14-2(a), and a discovery rule similar to that applied in *Truitt*, *see Witherspoon v. Bayer Healthcare Pharms., Inc.*, No. 13-CV-1912, 2013 WL 6069009, at *4 (E.D. Mo. Nov. 18, 2013), such that California Plaintiffs' claims would be untimely under New Jersey law. Likewise, California Plaintiffs were not California residents either at the time of their injuries or, with one exception, now.

### B.  California's Discovery Rule

California Plaintiffs next contend that, even if California law applies, California's discovery rule is distinguishable from the discovery rules of Texas and Indiana that were discussed in *Truitt*, because "the California discovery rule tolls accrual until the plaintiff 'is aware of her injury *and* its negligent cause.'"  (14-CV-5229, Doc. 9, at 3 (quoting *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (Cal. 1988)) (emphasis in Doc. 9).)  Thus, according to California Plaintiffs, the statute of limitations was not triggered until they had "specific knowledge and understanding of the defect of the Mirena."  (*Id.* (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005)).)

California Plaintiffs misinterpret *Fox*,[16] *Jolly*,[17] and the great weight of cases dealing with California's discovery rule.  Under California law, "'the plaintiff discovers the cause of action when [s]he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if [s]he lacks knowledge thereof – when, simply put, [s]he at least suspects . . . that someone has done something wrong to [her], wrong being used, not in any technical sense, but rather in accordance with its lay understanding.'"  *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1106 (C.D. Cal. 2013) (quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999)); *see Jolly*, 751 P.2d at 928 ("So long as a suspicion exists, it is clear that the plaintiff must go find the

---

[16]  *Fox* dealt with whether the plaintiff, who suffered injury when a staple failed to hold her small intestine shut following gastric bypass surgery, had sufficient reason to suspect that the stapler manufacturer (rather than the surgeon) caused her injuries.  *See Fox*, 110 P.3d at 917-18, 922-24.  The court held that the plaintiff did not have reason to suspect the stapler manufacturer played a role in her injuries until after the surgeon implicated the manufacturer in deposition testimony, because there was no reference to a faulty staple in her medical chart and there was otherwise no obvious connection between her injuries and a defective staple.  *See id.* at 922-24.  Accordingly, *Fox*'s reference to "reason to suspect an injury and some wrongful cause," *id.* at 917, means knowledge that the device played a role in the harm, not knowledge of the specific defect in the device that led to that harm.

[17]  *Jolly* stands for the opposite proposition than that for which California Plaintiffs attempt to cite it.  In *Jolly*, the California Supreme Court held that the statute of limitations on a products liability claim regarding a prescription drug was triggered when the plaintiff suspected that the drug caused her harm, even though she did not know exactly how it was defective.  *See Jolly*, 751 P.2d at 928-29.

facts; she cannot wait for the facts to find her.").  "Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [California courts] look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."  *Fox*, 110 P.3d at 920; *see Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 & 972 n.7 (9th Cir. 2002) (rejecting argument that "the statute of limitations didn't begin to run until [plaintiff] was aware, not only of his injuries, but also of defendants' specific wrongful conduct," particularly where product harmed the plaintiff in the precise manner that the manufacturer claimed the product would not harm him); *Hendrix*, 975 F. Supp. 2d at 1106 (plaintiff "has reason to discover the injury when [s]he has 'notice or information of circumstances to put a reasonable person on *inquiry*'") (quoting *Jolly*, 751 P.2d at 927-28) (emphasis in *Hendrix*).

Based on the foregoing, California Plaintiffs' assertion that California's discovery rule differs from the discovery rules of Texas and Indiana in that California's statute of limitations does not begin to run until a plaintiff has "specific knowledge and understanding of the defect of the Mirena," (*e.g.*, 14-CV-5229, Doc. 9, at 3), is incorrect.  Because California Plaintiffs do not argue that their factual allegations differ in any significant way from those made by Ms. Truitt,[18] their statutes of limitations began to run upon removal of the Mirena and their claims are time-barred.  Likewise, California Plaintiffs' request for leave to amend to specify their inability to discover Mirena's alleged design defect earlier, (*see id.*), is irrelevant to the running of their statutes of limitations for the reasons stated above, and is therefore denied as futile.  *See Gallop*, 642 F.3d at 369.

---

[18] Despite California Plaintiffs' forfeiture of this argument, I have reviewed their complaints and find that their allegations regarding discovery of the connection between Mirena and their injuries are, for all relevant purposes, similar to those made by Ms. Truitt.

### C.  Judicial Estoppel

Finally, California Plaintiffs argue that Defendants "should be judicially estopped from asserting that California's statute of limitations applies to [their] claims because it is entirely inconsistent with its earlier position that the multi-plaintiff action filing in California was improper."  (*E.g.*, 14-CV-5229, Doc. 9, at 3.)  This argument borders on the frivolous.  In the conference to which California Plaintiffs refer, Defendants stated – correctly – that multi-plaintiff complaints were improperly joined because they include "[c]ompletely different facts and [the] claims do not arise out of the same transaction or occurrence" under Fed. R. Civ. P. 20, not that these cases were improperly filed in California.  (*E.g., id.* Ex. A, at 41.)  Accordingly, Defendants have not maintained inconsistent positions and judicial estoppel does not apply.  *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) ("A party invoking judicial estoppel must show that: (1) his adversary advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner.") (internal quotation marks omitted).

* * *

The Court regrets this outcome.  The California Plaintiffs' claims will not be tested on the merits because of a poor choice by their counsel as to where to file.  California Plaintiffs' counsel is directed to provide a copy of this Opinion and Order to their affected clients.

### IV.  <u>Rachel Fitzgerald</u>

Oklahoma law applies to Ms. Fitzgerald's claims, because she filed her suit in Oklahoma.  *See Menowitz*, 991 F.2d at 40.  Ms. Fitzgerald's complaint states:

> In March 2011, Plaintiff presented to her OB/GYN physician for a routine check-up but this physician was unable to locate the IUD.  An x-ray was performed and revealed that Plaintiff's IUD was no longer within her uterus, but rather was free within her abdomen.  In March 2011, Plaintiff underwent surgery and the Mirena IUD was removed.

(14-CV-2572, Doc. 1, at ¶ 21.)  Ms. Fitzgerald filed her case in federal court on March 18, 2014.
(*See id.*)

Defendants argue that Ms. Fitzgerald's products liability claims are time-barred under
Oklahoma's two-year statute of limitations.  *See* Okla. Stat. tit. 12, § 95(A)(3).[19]  Ms. Fitzgerald
contends that, under Oklahoma's savings statute, her products liability claims are timely because
she timely filed suit in state court on April 1, 2013, dismissed her state court case, and then re-
filed her claims in federal court within one year of dismissing the state court action.  *See id.*
§ 100 ("If any action is commenced within due time, and . . . the plaintiff fail[s] in such action
otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year
after the   . . . failure although the time limit for commencing the action shall have expired before
the new action is filed.").  Because her Mirena was removed on March 30, 2011, she argues, the
two-year statute ran on March 30, 2013, which was a Saturday; her April 1, 2013 state suit was
timely because it was filed on the next business day, per Okla. Stat. tit. 12, § 2006; and she thus
had a year from the dismissal to file her federal case.

Fatal to Ms. Fitzgerald's argument, her complaint does not plead any factual allegations
regarding the state court action, nor are any state court documents attached to the complaint (or,
for that matter, her motion papers) as exhibits.  Oklahoma's savings statute thus does not render
Ms. Fitzgerald's claims timely.  *See Hagy v. Am. Honda Motor Co.*, 125 F. Supp. 2d 456, 458
(W.D. Okla. 2000) ("Under Oklahoma law, plaintiffs bear the burden of pleading sufficient facts
to demonstrate that their claims are not time-barred, and when they rely on the savings statute to

---

[19] Defendants also moved to dismiss Ms. Fitzgerald's breach of warranty claims.  (*See* 14-CV-2572, Doc. 24, at 2.)
Ms. Fitzgerald did not oppose Defendants' argument regarding these claims and thus has abandoned them.  *See
Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address
defendant's motion to dismiss with regard to this claim, it is deemed to be abandoned and hereby dismissed.").

preserve claims, they must include factual allegations concerning the filing and pendency of a prior, timely suit.") (citing *Kelley v. Lowder's Heirs*, 243 P.2d 1006, 1008 (Okla. 1952)).

Although such a technical pleading deficiency could be cured by amendment, Ms. Fitzgerald's Plaintiff Fact Sheet ("PFS") shows that any amendment would be futile because her state court case was not timely filed within the two-year statute of limitations. *See Gallop,* 642 F.3d at 369. Ms. Fitzgerald checked the "yes" box in response to the question, "Has any healthcare provider told you . . . that this/these claimed physical injury(ies) was/were related to your use of Mirena?" (14-CV-2572, Doc. 26, Ex. 1, at 22.) Underneath this box, Ms. Fitzgerald wrote that on March 17, 2011, her doctor "called [her] and told [her she] need[ed] surgery to remove Mirena because it perforated [her] uterine wall and migrated." (*Id.*) Accordingly, the two-year statute of limitations was triggered on that date, not on the date the device was surgically removed. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273 (10th Cir. 2013) (under Oklahoma's discovery rule, "'the statute of limitations in product liability cases does not begin to run until the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought, and that the defendant caused it'") (quoting *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 950 (Okla. 1984)); *see also Truitt*, 2014 WL 2971179, at *7 ("When the plaintiff knows that the IUD is no longer in the uterus and has to be removed from wherever it has migrated, the conclusion that the statute of limitations is triggered seems unavoidable."). Ms. Fitzgerald filed her case in state court on April 1, 2013, over two years after March 17, 2011. Ms. Fitzgerald thus does not possess facts from which she could plead a timely claim, *see* Okla. Stat. tit. 12, § 100 (original action must be "commenced within due time"), and her case is dismissed with prejudice.

## V.   <u>Rebecca Wojtowicz</u>

Ohio law applies to Ms. Wojtowicz's claims, because she filed her suit in Ohio.  *See*

*Menowitz*, 991 F.2d at 40.  Ms. Wojtowicz's amended complaint states:

> [I]n June 2010, Plaintiff suffered serious and life-threatening injuries resulting
> from the migration of the Mirena including, but not limited to, uterine perforation,
> as well as other severe and personal injuries of a permanent and lasting [] nature,
> including surgical removal of the Mirena . . . .

(13-CV-4693, Doc. 55, at ¶ 60.)  Ms. Wojtowicz filed her original complaint on March 29, 2013.

(*See id.*, Doc. 1.)

Defendants contend that Ms. Wojtowicz's products liability claims are time-barred under

Ohio's two-year statute of limitations, *see* Ohio Rev. Code Ann. § 2305.10(A), which began to

run in June 2010.[20]  Ms. Wojtowicz argues that equitable estoppel tolls the running of the statute

of limitations, because Defendants sent her a letter that "misled her about her injury, about how it

analyzed her injury, and about whether it warned her and her physician about her injury."  (13-

CV-4693, Doc. 74, at 1.).

The letter to which Ms. Wojtowicz refers is four paragraphs long.  (*See* 13-CV-4693,

Doc. 75, Ex. 1.)  It is in response to Ms. Wojtowicz's request that Defendants reimburse her for

the cost of having her Mirena "checked and removed."  (*Id.* Ex. 2.)  Defendants' letter states, in

relevant part,

> Our health and medical professionals have determined that your experiences are
> not unexpected occurrences with Mirena.  As with all medications, there are
> known risks that can occur with the use of Mirena.  These risks are specifically
> noted in the **WARNINGS, PRECAUTIONS** and **ADVERSE REACTIONS**
> sections of the Mirena prescribing information and in the Mirena patient
> information. . . . Though Bayer cannot approve your claim nor accept
> responsibility, we are very sorry that your experience did not meet your

---

[20] Defendants also argue that Ms. Wojtowicz did not sufficiently plead her fraud-based claims.  (*See* 13-CV-4693, Doc. 72, at 2.)  Ms. Wojtowicz did not respond to this argument and thus has abandoned these claims.  *See Hanig*, 384 F. Supp. 2d at 723.

expectations and we regret that you feel you had a difficult situation in association
with our product.

(*Id.* Ex. 1 (emphasis in original).)

Under Ohio law, "[a] prima facie case for equitable estoppel requires a plaintiff to prove

four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading;

(3) that it induced actual reliance which is reasonable and in good faith; and (4) that the reliance

caused detriment to the relying party." *JRC Holdings, Inc. v. Samsel Servs. Co.*, 850 N.E.2d 773,

779 (Ohio Ct. App. 2006) (internal quotation marks and alterations omitted). "Ohio cases have

held that when applied to a limitations defense, a plaintiff [seeking application of equitable

estoppel] must show that the defendant misrepresented the length of the limitations period,

promised a better settlement if the plaintiff did not bring suit, or made similar representations to

induce a delay in bringing suit." *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 510

(S.D. Ohio 2012) (citing *JRC Holdings*, 850 N.E.2d at 779). "A court may resolve the issue of

equitable estoppel's applicability on a Rule 12(b)(6) motion to dismiss if the plaintiff has not

pleaded facts that, if proved, demonstrate the defendant's efforts to prevent the plaintiff from

filing suit." *Id.*; *see Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 F. App'x 43, 47 (6th Cir.

2011) (under Ohio law, "[t]he party relying on equitable estoppel bears the burden to establish

that the requirements for equitable estoppel have been met").

Equitable estoppel does not apply to Ms. Wojtowicz's claims. First, Ms. Wojtowicz did

not plead facts regarding the letter – *i.e.* the facts she claims are relevant to her equitable estoppel

argument. *See Allen*, 913 F. Supp. 2d at 510. Second, any amendment of her complaint would

be futile, *see Gallop*, 642 F.3d at 369, because the letter from Defendants is not misleading as to

the length of the statute of limitations or Defendants' intention to settle Ms. Wojtowicz's claim if

she would forgo a lawsuit, *see Walburn*, 443 F. App'x at 49 (equitable estoppel did not apply to

misrepresentations that "did not pertain to the limitations period, defendant's willingness to waive the [limitations] defense, or an inducement to plaintiffs to abandon the presumably timely action"). Rather, the letter is a straightforward denial of responsibility for Ms. Wojtowicz's injuries and claims that she was adequately warned. Even if false, these statements are not the types of misrepresentation that could support an equitable estoppel argument. *See Young v. Carrier Corp.*, No. 14-CV-974, 2014 WL 6617650, at *6 (N.D. Ohio Nov. 21, 2014) (equitable estoppel did not save time-barred claims because, "[w]hile Plaintiff alleges that Defendant concealed the alleged defect, and that Carrier misrepresented the cause of her problems, there is no allegation that Defendant said anything calculated to induce [her] to forgo the right to sue") (internal quotation marks and citations omitted); *Kegg v. Mansfield*, No. 2000-CA-311, 2001 WL 474264, at *5 (Ohio Ct. App. Apr. 30, 2001) (equitable estoppel does not bar statute of limitations defense where alleged misrepresentations went to merits of claim, not to limitations period or proposed settlement). Accordingly, Ms. Wojtowicz's claims are dismissed with prejudice.

**VI.   Conclusion**

For the foregoing reasons, Plaintiffs' claims are dismissed with prejudice. The Clerk of Court is respectfully requested to spread this Opinion and Order to, and close, the cases in the caption. The Clerk of Court is further requested to terminate all pending motions in the cases in the caption, and the following pending motions in 13-MD-2434: Docs. 1834, 1837, 1839, 1841, 1843-1845, 1847, 1848, 1850, 1851, 1853-1858.

**SO ORDERED.**

Dated: January 9, 2015
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.